UNITED STATES BANKRUPTCY COURT
DISTRICT OF THE U.S. VIRGIN ISLANDS

| | | |
|---|---|---|
| IN RE: | . | Case No. 1:22-bk-10001-MFW |
| | . | Ch. 7 |
| COSMOGONY II, INC. AND | . | |
| COSMOGONY II, INC., | . | 5500 Veterans Dr., Room 310 |
| | . | St. Thomas, VI 00802 |
| | . | |
| Debtors. | . | March 18, 2025 |
| . . . . . . . . . . . . . .. | | 10:00 a.m. |

TRANSCRIPT OF STATUS CONFERENCE
BEFORE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For Glencore LTD:          Law Offices of Douglas L. Capdeville,
                             P.C.
                           By:  DOUGLAS CAPDEVILLE, ESQ.
                           2107 Company Street, Suite 2
                           Christiansted, VI 00820

                           Katten Muchin Rosenman LLP
                           By:  JACQUES SEMMELMAN, ESQ.
                           50 Rockefeller Plaza
                           New York, NY 10020

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

2

```
TELEPHONIC APPEARANCES (Cont'd):

For BC Litigation        The Pate Law Firm
Plaintiffs:              By:  J. RUSSELL B. PATE, ESQ.
                         P.O. Box 370
                         Christiansted, VI 00821

For the Chapter 7        Kevin F. D'Amour, P.C.
Trustee:                 By:  KEVIN F. D'AMOUR, ESQ.
                         5143 Palm Passage, Suites 18B & 19B
                         St. Thomas, VI 00802

                    - - -
```

3

1        **(Telephone participants very difficult to discern)**

2            COURTROOM DEPUTY:  This is the District Court of the

3   Virgin Islands Bankruptcy Division, Presiding Judge Mary F.

4   Walrath.

5            THE COURT:  Good morning.  Today is a day where I've

6   set several cases for status conference.  So, I'm going to call

7   the case, and then I'll ask counsel to identify themselves who

8   are there for that case.  And the first one is Cosmogony.  Is

9   anyone here for --

10            MR. SEMMELMAN:  Good morning, Your Honor.

11            THE COURT:  Good morning.

12            MR. SEMMELMAN:  Good morning, Your Honor, my name is

13  Jacques Semmelman.  I represent Glencore LTD and I'm here on

14  the Cosmogony II case.

15            THE COURT:  And whom do you represent, again?

16            MR. CAPDEVILLE:  Good morning, Your Honor.

17            THE COURT:  Whom do you represent, Mr. Semmelman?

18            MR. CAPDEVILLE:  Douglas Capdeville --

19            THE COURT:  Mr. Semmelman, whom do you represent?

20            MR. SEMMELMAN:  Glencore LTD.

21            THE COURT:  Thank you.  All right.  Anyone else?

22            MR. CAPDEVILLE:  Good morning, Your Honor, this is

23  Douglas Capdeville.  I am also counsel for Glencore with Mr.

24  Semmelman.

25            THE COURT:  Thank you.

4

1          MR. D'AMOUR:  This is Kevin D'Amour, Chapter 7

2  Trustee.

3          THE COURT:  Anyone else?

4          MR. POHL:  Your Honor --

5          UNIDENTIFIED ATTORNEY:  I'm not hearing.

6          MR. POHL:  Oh, sorry.

7          UNIDENTIFIED SPEAKER:  Yeah, Robert Pohl, you're on

8  mute.

9          MR. PAYNE:  This is Aaron Payne.  I am the bankruptcy

10  filing.

11          UNIDENTIFIED ATTORNEY:  And, Your Honor, Russell Pate

12  was also trying to get on the call.  I've sent him the links.

13  He is not on this call yet.

14          THE COURT:  All right.  Let me deal with the

15  Cosmogony case first.  I'm going to ask Mr. D'Amour to give us

16  a status on that case from the Trustee's perspective.

17          MR. D'AMOUR:  Yes, ma'am.  You issued, Your Honor

18  issued an order on August 29th, 2023 granting a motion for

19  relief from the automatic stay.  In that period of time as

20  (indiscernible) 2023, as I understand it -- oh, Mr. Payne is on

21  the line which is good.

22          As I understand, Mr. Payne and his client have

23  attempted to move this case through the courts in the Virgin

24  Islands and what they are waiting for now is an assignment of

25  the insurance policies, so that they can proceed.  We are

5

1  willing to, the Trustee is willing to allow that to happen

2  subject to a 15 percent receipt of funds should they collect

3  any monies.  Now I don't know how the Court's going to handle

4  that, but it will require them a lot of time to process their

5  claims and we will only receive money or the Trustee on behalf

6  of the creditors will only receive money should they be

7  successful.

8          I would like to address who would be entitled to

9  those funds at some future date should they be successful.  If

10 they are not successful, then, obviously, this will be a no

11 asset case and we will file a report of no distribution at that

12 point.  I don't know how long that will take and I don't know

13 how long -- how much patience the Court has to keep this case

14 open.

15         THE COURT:  All right.  Does Mr. Pate want to tell

16 us --

17         MR. PATE:  Good morning, Your Honor.

18         THE COURT:  Go ahead.

19         MR. PATE:  Good morning, it's Russell Pate for the

20 record.  My apologies for the delay.  Attorney Kevin D'Amour

21 sent me the link.

22         Yes, I concur that this, at the 30,000-foot level,

23 not to burden the Court, once we have the assignment then the

24 insurance companies, we've written to them.  I told them all

25 about the cases we have in litigation.  They pretty much

6

1  laughed us off saying that there's no direct action in the

2  Virgin Islands.

3        And so, with the assignment, we now have what's,

4  quote, unquote, a direct action where we can proceed against

5  Cosmogony and the insurers in the Virgin Islands wherein what's

6  called a complex litigation division.  There is a -- I call it

7  a magistrate, but he goes by a staff master designation.  And a

8  staff master has been waiting for this Court to order the

9  assignment so that we can place the insurers on our pleading

10  and proceed against them.  And I think that is going to be the

11  call-to-Jesus moment for the insurers.

12        Granted, I can never predict a settlement.  Of

13  course, on the plaintiff's side we love settlements.  It's less

14  work.  But I always have to be ready and my team has to be

15  ready to actually try the case to a jury if we need to and get

16  a judgment.  But with the discussion with Attorney Kevin

17  D'Amour, and he's coordinated with the U.S. Trustee, we know

18  the Bankruptcy Court is going to work and the Trustees are

19  going to work.

20        There's no issue for us if we collect money to give

21  some of that money back to the Court, but we just -- as

22  Attorney Kevin D'Amour said, we can't guarantee.  It's just

23  like telling a client I never can guarantee whether we can make

24  a collection, but we believe there's enough there that we're

25  spending good time and effort on a contingency basis to do it.

1          So, we'd hope we collect, too, and we hope we can for

2  our clients and we believe our clients deserve the highest

3  recovery possible and we will do that to the fullest extent we

4  can utilizing a reasonable amount of resources and balancing

5  all of our resources.  So, that's the long answer.  Attorney

6  Kevin D'Amour was much more succinct.

7          We have a collection, but we'll be back to the Court

8  with that -- with those monies and we'll have a little

9  celebration then.  If we don't, there will be no celebration,

10 but we won't bother the Court again.

11         THE COURT:  Okay.  Mr. D'Amour, are you prepared to

12 file the agreement with respect to the assignment shortly?

13 You're on mute still, I think.

14         MR. D'AMOUR:  I'm sorry.  Between Mr. Pate and

15 myself, I'm sure I can do that within the next ten days or so.

16         THE COURT:  All right.  And you --

17         MR. D'AMOUR:  It should be something simple.  It's

18 going to be just a notice of assignment and then ask the Court

19 to bless it, call it a day.

20         THE COURT:  Okay.  If you file that under

21 certification of counsel with a form of order, then I will

22 approve that so this can get moving.

23         MR. D'AMOUR:  Yes, ma'am.  Thank you.

24         MR. SEMMELMAN:  Your Honor, may I please be heard?

25 This is counsel for Glencore, Jacques Semmelman.

8

1          THE COURT:  Yes.

2          MR. SEMMELMAN:  May I please be heard on this?

3          THE COURT:  Yes, you may.

4          MR. SEMMELMAN:  Thank you.  First of all, we're all

5 in favor of trying to recover as much as possible from the

6 insurance carriers.  We have a serious issue with all of it

7 apparently going to Mr. Pate's clients.  We have no problem

8 that they get their fair share, but we, Glencore, initiated

9 this bankruptcy process in order to get our fair share.

10          And we filed a claim, I believe, Lockheed Martin

11 filed a complaint.  I haven't seen a group of claims filed Mr.

12 Pate's clients, but if they have been, then I'm sure I'll be

13 informed of that.  But right now from the sounds of the

14 conversation that's taking place so far in this call, it sounds

15 like everything is being steered in the direction of Mr. Pate's

16 clients.

17          What I think should happen is the parties should try

18 to recover whatever they can from the insurance carriers and

19 all of those funds should be deposited into a Court approved

20 account and at that point we could see if there have been any

21 recoveries, where I think everybody knows it's possible there

22 are no recoveries, in which case, as noted, it all becomes a

23 mute issue.

24          But if there are recoveries, I would submit, Your

25 Honor, that the recoveries should be deposited into a Court

9

1  approved account which is consistent with the order from

2  October 29th, 2023 providing for the deposit of funds into a

3  Court approved account with no funds to be withdrawn by any

4  interested party without the approval of the Court and then we

5  could decide if there's enough money in the pot to fight over

6  or we could just clean it up on probably a settlement or maybe

7  there will be enough money to make everybody happy which

8  probably not likely, but you never know.

9          So, I think that it's premature to have everything go

10 in the direction of Mr. Pate's clients.  I understand he's

11 zealous in fighting for his clients.  That's admirable, but at

12 the same time I have a client, as well, and I respectfully

13 submit that their interests have the right to be considered as

14 well.

15          MR. PATE:  And, Your Honor, actually we would have no

16 objection to putting it all into the Court's pot.  Here's the

17 one caveat.  It's just a little bit more work for the Court is

18 that the policies we're going after, and I do not want to delve

19 deep into this, Your Honor, I'm going to give, again, a

20 30,000-foot viewpoint.

21          The policies that we're targeting are general

22 liability policies.  They're to protect, you know, it's

23 liability policies that Cosmogony had to work on the Refinery,

24 the Bauxite Alumina Refinery premises that are to enure to the

25 benefit of persons injured.

10

1          So, Glencore has one document that says it is very

2 boilerplate, it's very -- let's just say it's very undetailed.

3 And so, at that point, Your Honor would have to look at it to

4 see if this is really an indemnity agreement.  The plaintiffs

5 feel like they're really stretching, but this will be the

6 Court's decision if we have any money.  We really don't have to

7 cross that bridge now.

8          And the plaintiffs are kind of confident that if we

9 get money together, and we're happy to have Glencore help us

10 get money, but once we have money, if we do, then we can cross

11 that bridge where Glencore's going to say we're owed some from

12 this little sheet of paper and the plaintiffs will probably say

13 I don't know, Your Honor, if you look at it, it doesn't really

14 say what it says.  And we may never act in that if we get

15 nothing.

16          If we do, Attorney Semmelman and I will be somewhat

17 adversarial there.  But right now we're on the same team trying

18 to find the treasure.  So, that's my summary.  Thank you.  And

19 we could agree with Attorney Semmelman.  We're actually happy

20 to draft a document with -- in consultation with him for the

21 assignment.

22          THE COURT:  All right.  Well, why don't the three

23 parties get together and at least get the hopefully the action

24 moving to get the insurance proceeds.  And they can be

25 deposited into the court and then decide which of the groups is

11

1 entitled to them.  Mr. D'Amour, do you have any objection to

2 that process?

3          MR. D'AMOUR:  No.  In fact, that's something Mr. Pate

4 and I had discussed.

5          THE COURT:  Okay.  All right.  Then I'll look for a

6 proposed notice of assignment and a form of order that all

7 three parties can agree to.

8          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor, thank

9 you for your time.

10          UNIDENTIFIED ATTORNEYS:  Thank you.

11          THE COURT:  All right.  And then the parties that are

12 only here for Cosmogony may be excused.

13                         * * * * *

14                   **C E R T I F I C A T I O N**

15          I, KELLI R. PHILBURN, court approved transcriber,

16 certify that the foregoing is a correct transcript from the

17 official electronic sound recording of the proceedings in the

18 above-entitled matter, and to the best of my ability.

19

20 /s/ Kelli R. Philburn

21 KELLI R. PHILBURN

22 J&J COURT TRANSCRIBERS, INC.      DATE:  March 24, 2025

23

24

25

**WWW.JJCOURT.COM**